**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAFAYETTE-OPELOUSAS DIVISION**

| | | |
|---|---|---|
| **ROLAND P. JONES, JR.** | * | **CIVIL ACTION NO. 05-1746** |
| **VERSUS** | * | **JUDGE MELANÇON** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

**REPORT AND RECOMMENDATION**

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Roland P. Jones, Jr., born January 18, 1958, protectively filed an application for disability insurance benefits on May 2, 2003, alleging disability since March 19, 2002, due to neck, back, knee problems, diabetes, and high blood pressure.[1] By Decision dated January 24, 2005, the Administrative Law Judge ("ALJ") found that claimant had been under a disability since February 19, 2004, but not before. Claimant appealed this decision.

FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is not substantial

---

[1] Claimant filed a previous application for benefits on August 16, 2002, which was denied initially and not pursued any further.

evidence in the record to support the Commissioner's decision of non-disability. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions regarding claimant's disability is not supported by substantial evidence, based on the following:

**(1) Records from Dr. Robert W. Davis dated March 20, 2002**. Claimant complained of left shoulder trauma, and left knee and lower back problems after a work-related injury on March 19. (Tr. 128). Dr. Davis' assessment was a contusion of the left shoulder, lumbar spine, and left knee. (Tr. 129). He advised claimant to apply cool compresses, and prescribed Vicodin and Naproxen. Dr. Davis stated that claimant could return to light duty, with minimized use of the left shoulder and left knee and a 20-pound lifting restriction.

**(2) Records from Dr. Lubor Jarolimek dated March 21, 2002 to August 8, 2002**. On March 21, 2002, claimant complained of constant left shoulder, neck, and low back pain. (Tr. 137). He stated that his back pain radiated to the right hip and into the midback. He also reported his legs felt weak when he tried to walk.

On examination, claimant ambulated with a slow, antalgic gait. He had tenderness to palpation of the lumbar spine with associated myospasms. Range of motion was decreased and painful. Straight leg raising was positive bilaterally. Deep

2

tendon reflexes were equal, and motor strength was 5/5 in the lower extremities.

Left shoulder examination revealed tenderness to palpation with associated myospasms. Deep tendon reflexes were equal and reactive, and motor strength was 5/5 in the upper extremities. (Tr. 137-38). The cervical spine had decreased range of motion and tenderness to palpation with associated myospasms. (Tr. 138).

The knee exam revealed tenderness to palpation along the joint line. McMurray test was positive on the left. Range of motion was 3 to 5 degrees short of full extension to approximately 90 degrees of flexion.

Dr. Jarolimek's impression was lumbar and cervical spine strain, lumbar and cervical spine muscle spasm, rotator cuff tear tendonitis of the left shoulder, and a medical meniscal tear of the left knee. He recommended an MRI of the knee, rehabilitation for claimant's shoulder and lumbar spine, pain medication, and physical therapy.[2]

An MRI of the left knee dated April 4, 2002, showed a tear of the medial meniscus posterior horn. (Tr. 135, 247). Dr. Jarolimek recommended an arthroscopic partial medial meniscectomy, which was performed on June 24, 2002. (Tr. 133, 222-23).

---

[2]Claimant received physical therapy at St. Martinville Physical Therapy Clinic from May 17, 2002 through August 12, 2002. (Tr. 139-66).

3

An MRI of the cervical spine dated June 6, 2002, revealed disk herniation at C3-4, C5-6, and disk bulging at C2-3, 4-5. (Tr. 131, 248). An MRI of the lumbar spine dated July 22, 2002, showed disk protrusion at L1-L2 with left-sided foraminal stenosis, a left paracentral posterior herniated disk at L2-L3, and disk protrusion at L5-S1. (Tr. 130, 249). EMG of the lower extremities revealed evidence of bilateral S1 radiculopathy. Dr. Jarolimek referred claimant to a neurosurgeon, Dr. Bindal, for evaluation.

**(3) Records from Dr. Milton J. Jolivette, Jr. dated April 2, 2001 through January 8, 2003**. Dr. Jolivette treated claimant for high blood pressure and type II diabetes mellitus. (Tr. 172). He noted on March 14, 2002, that claimant's blood pressure had been out of control. He prescribed Glucophage XR, Ecotrin, and Tarka.

**(4) Records from Bindal Neurosurgical Clinic dated September 19, 2002 to May 1, 2003**. On September 19, 2002, claimant complained of neck pain going down the left arm and side, and back pain going down his legs. (Tr. 198). On examination, claimant had weakness in his left tricep, and increased pain on hip flexion testing and with his left knee. He also had some soreness in his paraspinal muscles areas in his lower back, mid-back, and neck. (Tr. 199). An MRI revealed a disk herniation at C6-7 level that was impinging on the spinal cord.

4

Dr. Bindal noted that claimant had a rather significant disk herniation at C6-7, and a smaller disk herniation at L5-S1. He recommended surgery to the C6-7 disk, as it was causing significant neural compression with physical and radiographic findings all consistent with his complaints.

On January 21, 2003, Dr. Bindal performed an anterior cervical decompression fusion at C6-C7. (Tr. 177-79). On February 13, 2003, Dr. Bindal reported that claimant had done well with some improvement of his preoperative symptoms. (Tr. 196). He recommended neck stretching and strengthening exercises.

A lumbar spine MRI dated April 9, 2003, showed a disc bulge at L4-L5 and a disc herniation at L5-S1, with the herniation abutting on the thecal sac. (Tr. 184-85). There was a 50% neural foraminal stenosis bilaterally.

On May 1, 2003, Dr. Bindal noted that claimant had done well with his operation, noting improvement of symptoms with only occasionally soreness, particularly when turning his neck to the left. (Tr. 194). However, he was still having a lot of back trouble that radiated down both legs, affecting the left leg more. Dr. Bindal advised claimant to consider lumbar spine surgery. He opined that claimant was "disabled from work responsibilities."

**(5) Consultative Examination by Dr. Raymond F. Taylor dated July 30, 2003**. Claimant complained of low back pain with radiation down the right leg to the

5

right ankle. (Tr. 204). He also reported that his neck symptoms had returned three months post-surgery.

Additionally, claimant complained of pain and swelling his left knee. He reported that his arthroscopic surgery had helped, but he still had swelling if he walked more than one block at a time.

Claimant also had a history of diabetes. He reported that his blood sugar was under good control. Additionally, he had hypertension and gastroesophageal reflux disease. (Tr. 205). His medications included Hydrocodone APAP, Carisoprodol, Glyburide, Metformin, Aciphex, and Benicar.

On examination, claimant was 70 3/4 inches tall and weighed 264 pounds. (Tr. 206). His blood pressure was 169/97. His visual acuity was 20/25 in the right eye and 20/30 in the left eye without correction.

On musculoskeletal examination, claimant had limited range of motion. (Tr. 207). Dr. Taylor opined that during these maneuvers, claimant exhibited "very poor effort," and he believed that claimant could do much better. Claimant had no paracervical or paravertebral muscle spasm or tenderness. He had tenderness over the right sacrioiliac joint and sacral sciatic notch. Straight leg raising was negative.

Range of motion of the extremities was normal. Claimant had no loss of muscle strength or atrophy. Grip strength was good. Manual dexterity and grasping

ability were normal.

Claimant had no swelling, instability, or deformity of the joints. His gait was antalgic. Station was normal. He could walk on his heels and toes without difficulty.

Neurologically, claimant was oriented to time, place, and person. Cranial nerves, motor nerve, sensory nerve function, and deep tendon reflexes were normal. Psychologically, claimant was normal.

Dr. Taylor's diagnoses were mechanical neck pain status-post anterior and posterior decompression and cervical fusion at C6-7, mechanical low back pain probably secondary to herniated disc, left knee pain probably secondary to a partial tear of the posterior horn of the medial meniscus, non-insulin dependent diabetes mellitus, and gastroesophageal reflux disease. (Tr. 208). He noted that claimant had no evidence of end organ damage from his diabetes or hypertension.

Dr. Taylor noted that claimant had limited range of motion of his neck and back, but his participation was poor, and he felt that claimant could have done much better. He observed that there were no objective findings, such as muscle spasm, positive straight leg raising, or neurological deficits. He further found that knee examination was normal.

Dr. Taylor opined that claimant's work-related activities needed to be limited. (Tr. 209). He recommended that claimant do no lifting of objects over 40 pounds, no

7

frequently lifting or carrying of objects over 25 pounds, and no activities requiring frequent or repetitive bending, stooping, or climbing.

**(6) Physical Residual Functional Capacity ("RFC") Assessment dated August 22, 2003**. Claimant was found to be able to lift/carry 20 pounds occasionally and 10 pounds frequently. (Tr. 211). He could stand/walk and sit about 6 hours in an 8-hour workday. He had unlimited push/pull ability. He could occasionally perform all postural activities, except that he could never climb ladders, ropes, or scaffolds. (Tr. 212). His statements were found to be partially credible. (Tr. 215).

**(10) Records from LSU Healthcare Network dated February 19, 2004 to April 1, 2004**. Claimant continued to complain of low back pain. (Tr. 218). His examination was non-focal with mechanical changes in the back. He had a weaker grip in the left side, and hyperesthesias in the left hand. He also had decreased range of motion of the lower back with a moderate amount of spasm in the paraspinous muscles, and antlagic gait.

Dr. Deepak Awasthi opined that claimant "continue[d] to be totally disabled from his back pain" as a result of his disc herniation. He noted that claimant had been scheduled for surgery, but the insurance company had not approved it. He prescribed Lortab 10.

8

Dr. Awasthi felt that because of claimant's back troubles and problems with leg pain, he could not perform any significant activities. He opined that claimant was disabled, and should consider surgery.

In the Medical Assessment of Ability to do Work-Related Activities completed on April 1, 2004, Dr. Awasthi opined that claimant could lift approximately 10 pounds occasionally due to weakness in his arms and hands, and antalgic gait. (Tr. 220). He found that claimant could stand/walk 4 hours in an 8-hour day, and 15 minutes without interruption, due to his legs giving out. He determined that claimant could sit for 4 hours out of an 8-hour day, and 15 minutes without interruption, due to back spasms. He also stated that claimant could occasionally kneel, stoop, and crawl, and never climb, crouch, and balance. (Tr. 221).

**(11) Records from Dr. Jolivette dated July 10, 2003 to August 24, 2004**. On July 10, 2003, claimant reported chest pain brought on by food. (Tr. 231). Dr. Jolivette believed that it was caused by gastroesophageal reflux, and prescribed Aciphex. He noted that claimant was being closely monitored for his diabetes and poor cardiovascular disease, and that his symptoms were not suggestive of cardiovascular disease. He stated that claimant needed to lose weight.

On September 1, 2004, Dr. Jolivette reported that claimant's diabetes had been out of control. (Tr. 227). He noted that claimant had not calibrated his glucometer

in over a year. Dr. Jolivette changed his medication. He stated that claimant was considered to be "completely disabled." (Tr. 226).

**(12) Records from LSU Healthcare Network dated December 11, 2003 to November 11, 2004**. On August 23, 2004, claimant continued to have low back pain with numbness and tingling in his lower extremities and occasional urinary incontinence. (Tr. 236). On examination, he had diminished sensation in the S1 dermatome on the left side and an antalgic gait. Dr. Atwasthi scheduled claimant for L5-S1 posterior interbody fusion on October 1. (Tr. 235).

On October 21, 2004, claimant was three weeks post-surgery, and reported increasing left-sided leg pain and burning hyperesthesias and numbness in the left foot. (Tr. 234). A CT scan showed one of the spacers from the L5-S1 to be partially in the spinal canal. Dr. Awasthi scheduled claimant for re-exploration on October 26.

On November 11, 2004, claimant was status-post L5-S1 posterior lumbar body fusion and a re-do fusion, and was doing well. (Tr. 246). His leg discomfort had improved, but he still had weakness in his left foot and decreased sensation on that side related to the nerve root injury. His wound had healed well. Dr. Atwasthi prescribed Lortab.

**(13) Claimant's Administrative Hearing Testimony**. At the hearing on December 15, 2004, claimant was 46 years old. (Tr. 259). He testified that he was

5 feet 11 inches tall and weighed 242 pounds.

Claimant reported that he had been injured on the job. (Tr. 260). He had received a worker's compensation settlement of $325,000.

Claimant testified that he had had back surgeries on October 1 and 26. (Tr. 260-61). He stated that he had the surgery because his legs started giving out. (Tr. 264).

Prior to the surgery, claimant reported that he could sit for about 10 to 15 minutes. (Tr. 265). He stated that he could walk to the end of his driveway. (Tr. 269). He testified that he could stand for about 15 to 20 minutes because of numbness in his left leg and knee pain. (Tr. 270). He said that he could lift a gallon of milk. (Tr. 273). He related that he could not bend, twist, stoop, kneel, or climb. (Tr. 278).

Claimant reported that he had also had operations on his neck and knee. (Tr. 262). He complained that he still had problems with his hands and right shoulder after the neck surgery. Additionally, he testified that he had diabetes and high blood pressure. (Tr. 268).

Claimant stated that he was taking Oxycontin and Valium. (Tr. 263). He reported that he smoked a pack of cigarettes a day. (Tr. 264). He testified that the medications made him sleep a whole lot. (Tr. 272).

**(14) The ALJ's Decision**. Claimant argues that the ALJ erred in giving the greatest weight to Dr. Taylor's opinion for the period prior to February 19, 2004. Because the ALJ erred in evaluating the reports from claimant's treating physicians, I find that this case should be **REVERSED,** and that claimant should be awarded benefits as of March 19, 2002, which was his onset date.

Dr. Bindal opined on May 1, 2003, that claimant was "disabled from work responsibilities." (Tr. 194). The ALJ discounted this opinion on the grounds that it was "rather conclusory," and did not state what restrictions claimant might have that would limit his ability to work. (Tr. 21-22). He gave the greatest weight to Dr. Taylor's opinion for the period prior to February 19, 2004, finding that his opinion was "consistent with the evidence at the time" and was "well supported." (Tr. 22).

It is well established that the opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with

... other substantial evidence." *Newton,* 209 F.3d at 455 (citing 20 C.F.R. § 404.1527(d)(2)). Good cause for abandoning the treating physician rule includes disregarding statements by the treating physician that are brief and conclusory, not supported by medically accepted clinical laboratory diagnostic techniques, or otherwise unsupported by evidence. *Leggett*, 67 F.3d at 566; *Greenspan*, 38 F.3d at 237.

The ALJ found that Dr. Bindal's statement as to claimant's disability was "conclusory." (Tr. 21). However, Dr. Bindal's findings are supported by diagnostic tests, including MRIs. The cervical MRI dated June 6, 2002 confirmed that claimant had a disk herniation at C6-7 that was impinging on the spinal cord. (Tr. (199, 248). A lumbar MRI dated July 22, 2002, showed disk protrusion at L1-L2 with left-sided foraminal stenosis, a left paracentral posterior herniated disk at L2-L3, and disk protrusion at L5-S1. (Tr. 130, 249). Dr. Bindal recommended surgery first to the C6-7 disk, as it was causing significant neural compression with physical and radiographic findings all consistent with claimant's complaints. (Tr. 199).

Subsequently, a lumbar spine MRI dated April 9, 2003, showed a disc bulge at L4-L5 and a disc herniation at L5-S1, with the herniation abutting the thecal sac. (Tr. 184-85). It also showed a 50% neural foraminal stenosis bilaterally. (Tr. 184).

On May 1, 2003, Dr. Bindal noted that claimant had done well with his neck operation, but was still having a lot of back trouble that radiated down both legs, affecting the left leg more. (Tr. 194). Based on the MRI results and claimant's continued symptoms, Dr. Bindal opined that claimant was "disabled from work responsibilities."

Dr. Bindal's opinion is further bolstered by that of claimant's treating neurosurgeon, Dr. Awasthi. On February 19, 2004, Dr. Awasthi indicated that claimant "continues to be totally disabled from his back pain as a result of the disc herniation in the lower back." (Tr. 218, 233). While Dr. Awasthi did not specify when he made the determination that claimant was disabled, his use of the phrase *"continues to be* totally disabled" suggests that it was prior to February 19, 2004. (emphasis added).

In *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001), the court held that an ALJ must consider the following factors before declining to give any weight to the opinions of a treating doctor: length of treatment, frequency of examination, nature and extent of relationship, support provided by other evidence, consistency of opinion with record, and specialization. *Id.* at 621 (citing *Newton,* 209 F.3d at 456). The ALJ did not consider those factors in this case. The undersigned finds that this constitutes error.

14

Accordingly, it is my recommendation that the Commissioner's decision be **REVERSED**, and the claimant be awarded benefits. The undersigned recommends that claimant be awarded benefits as of March 19, 2002, which is the date of onset.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.** *DOUGLASS V. UNITED*

*SERVICES AUTOMOBILE ASSOCIATION*, **79 F.3D 1415 (5TH CIR. 1996).**

Signed this 19th day of July, 2006, at Lafayette, Louisiana.

_____
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE